# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **MADELYN L. BLEVINS,** ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 1:05cv00103 |
| ) | **MEMORANDUM OPINION** |
| ) | |
| ) | |
| **JO ANNE B. BARNHART**, ) | |
| **Commissioner of Social Security,** ) | By:   PAMELA MEADE SARGENT |
| Defendant ) | United States Magistrate Judge |

In this social security case, I affirm the final decision of the Commissioner denying benefits.

*I. Background and Standard of Review*

Plaintiff, Madelyn L. Blevins, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423. (West 2003 & Supp. 2006). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517

-1-

(4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Blevins protectively filed her application for DIB on or about August 6, 2002, alleging disability as of January 31, 2002, based on fibromyalgia and chronic fatigue syndrome. (Record, ("R."), at 56-58, 66, 102.) Blevins's claim was denied both initially and on reconsideration. (R. at 42-44, 47, 48-50.) Blevins then requested a hearing before an administrative law judge, ("ALJ"). (R. at 51.) The ALJ held a hearing on July 17, 2003, at which Blevins was represented by counsel. (R. at 24-39.)

By decision dated August 8, 2003, the ALJ denied Blevins's claim. (R. at 12-18.) After the ALJ issued his opinion, Blevins pursued her administrative appeals, but the Appeals Council denied her request for review. Blevins then filed an action seeking review of the ALJ's unfavorable decision with this court. The Commissioner filed a motion to remand on March 18, 2004. (R. at 285-87.) By order dated March 18, 2004, this matter was remanded to the Commissioner for further proceedings. (R. at 284, 290-92.) A second hearing before an ALJ was held on March 21, 2005, at which Blevins was represented by counsel. (R. at 344-65.)

By decision dated April 1, 2005, the ALJ again denied Blevins's claim. (R. at 277-83.) The ALJ found that Blevins met the disability insured status requirements of the Act for DIB purposes through the date of the decision. (R. at 281.) The ALJ found that Blevins had not engaged in substantial gainful activity since January 31, 2002. (R. at 281.) The ALJ found that the medical evidence established that Blevins had severe impairments, namely fibromyalgia and chronic fatigue, but he found that Blevins did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 281.) The ALJ further found that Blevins's allegations regarding her pain and symptoms were not totally credible. (R. at 281.) The ALJ found that Blevins had the residual functional capacity to perform light work[1] that did not require her stand and/or walk for longer than two hours in an eight-hour workday and that did not require the performance of more than occasional climbing, balancing, stooping, kneeling, crouching and crawling. (R. at 282.) Thus, the ALJ found that Blevins could not perform any of her past relevant work. (R. at 282.) Based on Blevins's age, education and work experience and the testimony of a vocational expert, the ALJ concluded that Blevins could perform jobs existing in significant numbers in the national economy, including those of an information clerk, an order clerk, a cashier, a ticket seller, a hand packager, a sorter, an assembler and an inspector. (R. at 282.) Therefore, the ALJ found that Blevins was not under a disability as defined in the Act, and that she was not eligible for benefits. (R. at 282-83.) *See* 20 C.F.R. § 404.1520(g) (2006).

---

[1]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, she also can do sedentary work. *See* 20 C.F.R. § 404.1567(b) (2006).

After the ALJ issued his opinion, Blevins pursued her administrative appeals, (R. at 264), but the Appeals Council denied her request for review. (R. at 5-8.) Blevins then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2006). The case is before this court on Blevins's motion for summary judgment filed March 20, 2006, and the Commissioner's motion for summary judgment filed April 24, 2006.

## *II. Facts*

Blevins was born in 1955, (R. at 56), which classifies her as a "person closely approaching advanced age" under 20 C.F.R. § 404.1563(d). She has a high school education and four years of college education. (R. at 72.) Blevins has past relevant work experience as an incident manager, a technical support analyst, a hardware specialist, an information center consultant and a word processing technician. (R. at 76.)

Thomas Schacht, Ph.D., a medical expert, testified at Blevins's hearing. (R. at 353-59.) Schacht testified that the record overall indicated a positive response to treatment. (R. at 355.)

Donna Bardsley, a vocational expert, also was present and testified at Blevins's hearing. (R. at 359-64.) Bardsley was asked to consider a hypothetical individual of Blevins's age, education and work experience, who was limited as indicated by the assessment of Dr. Richard M. Surrusco, M.D., a state agency physician. (R. at 248-55, 362.) Bardsley testified that such an individual could perform jobs at the light exertional level that existed in significant numbers in the national economy, including

-4-

those of an information clerk, an order clerk, a cashier, a ticket seller, a hand packager, a sorter, an assembler and an inspector. (R. at 363.) Bardsley testified that there would be no impact on the jobs identified if the individual was limited as indicated by Edward E. Latham, Ph.D., a clinical psychologist. (R. at 323-25, 363.)

In rendering his decision, the ALJ reviewed records from Julie Jennings, Ph.D., a state agency psychologist; Dr. Randall Hays, M.D., a state agency physician; Joseph Leizer, Ph.D., a state agency psychologist; Dr. Richard M. Surrusco, M.D., a state agency physician; Brian E. Warren, Ph.D., a licensed clinical psychologist; Edward E. Latham, Ph.D., a clinical psychologist; Mount Rogers Community Counseling Services; Dr. Sebastian L. Ornopia, M.D.; Dr. Richard C. Haaser, M.D.; Dr. Carey W. McKain, M.D., an orthopedist; Dr. Michael R. Fleenor, M.D., an orthopedist; Dr. Michael W. Bible, M.D.; Dr. Darlinda M. Grice, M.D.; Dr. Gerard H. Murphy, M.D.; and Dr. Wayne C. Reynolds, M.D.

The record shows that Dr. Gerard H. Murphy, M.D., and Dr. Wayne C. Reynolds, M.D., treated Blevins from November 1996 through January 2005 for various complaints including sinusitis, migraine headaches, upper respiratory infections, heart palpitations, fibromyalgia and bilateral shoulder pain. (R. at 110-23, 308-12, 316-18, 342-43.) In April 2003, Blevins denied any depression. (R. at 311.) In July 2003, Blevins reported that she had done well with Flexeril. (R. at 309.) She reported that she was dealing with her fibromyalgia with an exercise program. (R. at 309.) She reported that she swam up to four times a week and walked up to three miles a day. (R. at 309.) In November 2003, Blevins reported that her fibromyalgia had been "pretty well controlled" on her current medication. (R. at 308.) In November 2004, Dr.

Murphy reported that Blevins was in "relatively good spirits." (R. at 343.) Blevins reported that her depression was worsening. (R. at 343.) In January 2005, Blevins reported that she was more depressed. (R. at 342.) She reported that her fibromyalgia was fairly well-controlled with medication and exercise. (R. at 342.)

The record shows that Dr. Sebastian L. Ornopia, M.D., and Dr. Richard C. Haaser, both psychiatrists, treated Blevins from August 1997 through October 2002 for depression.[2] (R. at 126-38.) Blevins reported improvement with her depressive symptoms with medication. (R. at 126, 128-30, 132-33, 135.) In January 1999, Blevins's Global Assessment of Functioning, ("GAF"), score was assessed at 60-65.[3] (R. at 130.) In February 1999, Blevins's GAF score was assessed at 70-75.[4] (R. at 129.) In October 2002, Blevins's GAF score was assessed at 60. (R. at 126.) Dr. Ornopia diagnosed major depressive disorder, recurrent, fibromyalgia and a significant anxiety component. (R. at 126.)

---

[2]Blevins was seen on three occasions in 1997, three occasions in 1998 and three occasions in 1999. (R. at 128-38.) She was seen on one occasion in 2001 and on one occasion in 2002. (R. at 126-27.)

[3]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994). A GAF of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32. A GAF of 61-70 indicates "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ... , but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32.

[4]A GAF of 71-80 indicates "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors ...; no more than slight impairment in social, occupational, or school functioning...." DSM-IV at 32.

Case 1:05-cv-00103-PMS   Document 15   Filed 09/01/06   Page 6 of 17   Pageid#: 60

In July 2001, Dr. Carey W. McKain, M.D., an orthopedist, saw Blevins for her complaints of neck and right shoulder pain. (R. at 142.) X-rays of Blevins's neck and shoulder were normal. (R. at 142.) She had normal range of motion in her shoulder and neck. (R. at 142.) There was no evidence of orthopedic/neurologic abnormalities. (R. at 142.)

In May 2000, Dr. Michael W. Bible, M.D., saw Blevins for her complaints of shoulder, neck, back and arm pain. (R. at 145-50.) Blevins also complained of depression. (R. at 149.) She had good muscle strength in her upper and lower extremities. (R. at 149.) She had good range of motion of the shoulders, elbows, wrists, knees, ankles, small joints of the hands and feet. (R. at 149.) Dr. Bible diagnosed fibromyalgia with no evidence of underlying inflammatory arthritis. (R. at 149.) He recommended regular and consistent exercise. (R. at 150.)

The record shows that Dr. Darlinda M. Grice, M.D., saw Blevins for her complaints of fibromyalgia and chronic fatigue from December 2001 through November 2002. (R. at 155-203.) In December 2001, Blevins denied significant depression. (R. at 172-74.) Straight leg raising tests were normal, and Blevins had a normal mental status. (R. at 173.) Blevins's had normal strength in the upper and lower extremities. (R. at 173.) In January 2002, Blevins reported "terrific improvement" with chronic fatigue symptoms while taking Provigil. (R. at 169.) In May 2002, Blevins reported that her symptoms were fairly stable and that she felt better. (R. at 162.) She reported that she had discontinued the use of Provigil. (R. at 162.)

In September 2002, Dr. Grice reported that Blevins could perform sedentary[5] to light work that did not require her to stoop, kneel, crouch or crawl. (R. at 201.) She reported that Blevins could balance or reach for a total of 2.5 hours in an eight-hour workday. (R. at 201.) She reported that Blevins could walk, sit and stand up to 5.5 hours in an eight-hour workday. (R. at 201.) Dr. Grice reported that Blevins was disabled from performing her regular occupation because of the driving distance. (R. at 201.) She did report that Blevins was not disabled from any occupation. (R. at 201.) She recommended that Blevins find sedentary work close to home or work out of her home. (R. at 201.) She reported that Blevins was able to perform desk work that was self-paced with frequent breaks. (R. at 202.) In November 2002, Blevins again complained of chronic fatigue. (R. at 159.) Dr. Grice reported that fatigue was Blevins's most disabling complaint. (R. at 159.)

On January 2, 2003, Julie Jennings, Ph.D., a state agency psychologist, indicated that Blevins was moderately limited in her ability to understand, remember and carry out detailed instructions, to maintain attention and concentration, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to sustain an ordinary routine without special supervision, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods and to set realistic goals or make plans independently of

---

[5]Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 404.1567(a) (2006).

others. (R. at 205-08.) Jennings found that Blevins was not significantly limited in all other areas. (R. at 205-06.) Jennings reported that Blevins had depression related to her physical condition. (R. at 207.) Jennings reported that with her depression symptoms, Blevins could perform simple, unskilled, nonstressful work. (R. at 207.)

Jennings also completed a Psychiatric Review Technique form, ("PRTF"), indicating that Blevins suffered from an affective disorder. (R. at 209-23.) She indicated that Blevins had moderate limitations in her activities of daily living, in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 219.) She found that there was insufficient evidence to determine if Blevins ever experienced episodes of decompensation. (R. at 219.)

On January 3, 2003, Dr. Randall Hays, M.D., a state agency physician, indicated that Blevins has the residual functional capacity to perform light work. (R. at 225-32.) He also indicated that Blevins could stand and/or walk a total of two hours in an eight-hour workday. (R. at 226.) He indicated that Blevins could sit a total of six hours in an eight-hour workday. (R. at 226.) Dr. Hays found that Blevins's ability to push and pull was unlimited. (R. at 226.) Dr. Hays reported that Blevins could frequently climb ramps and stairs and never climb ladders, ropes or scaffolds. (R. at 227.) He found that she could frequently balance, stoop, kneel, crouch and crawl. (R. at 227.) He found no manipulative, visual, communicative or environmental limitations. (R. at 228-29.) Dr. Hays reported that Blevins was capable of performing her past sedentary work without the driving time. (R. at 230.)

On April 1, 2003, Joseph Leizer, Ph.D., a state agency psychologist, completed

a PRTF indicating that Blevins suffered from a nonsevere affective disorder and anxiety-related disorder. (R. at 233-47.) He indicated that Blevins had no restriction of activities of daily living, in maintaining social functioning or in maintaining concentration, persistence or pace. (R. at 243.) He also found that she had experienced no episodes of decompensation. (R. at 243.)

On April 1, 2003, Dr. Richard M. Surrusco, M.D., a state agency physician, indicated that Blevins had the residual functional capacity to perform light work. (R. at 248-54.) He also indicated that Blevins could stand and/or walk a total of two hours in an eight-hour workday. (R. at 249.) He indicated that Blevins could sit a total of six hours in an eight-hour workday. (R. at 249.) Dr. Surrusco found that Blevins's ability to push and pull was unlimited. (R. at 249.) Dr. Surrusco reported that Blevins could occasionally climb, balance, stoop, kneel, crouch and crawl. (R. at 250.) He found no manipulative, visual, communicative or environmental limitations. (R. at 250-52.)

On June 24, 2003, Brian E. Warren, Ph.D., a licensed clinical psychologist, evaluated Blevins at the request of Blevins's attorney. (R. at 256-59.) Warren reported that Blevins's mood was depressed. (R. at 257.) He reported that Blevins appeared fatigued. (R. at 257.) The Minnesota Multiphasic Personality Inventory-2, ("MMPI"), test and the Pain Patient Profile were administered. (R. at 258-59, 315.) Warren diagnosed major depressive disorder, recurrent and severe, and generalized anxiety disorder. (R. at 259.)

On August 10, 2004, Edward E. Latham, Ph.D., a clinical psychologist, evaluated Blevins at the request of Disability Determination Services. (R. at 319-22.)

No pathological disturbance in thought process, thought content or perception was noted. (R. at 319.) Blevins reported that she worked at the animal shelter and helped at the local food pantry. (R. at 320.) Latham reported that Blevins showed evidence of an emotional disturbance. (R. at 321.) Latham diagnosed somatoform disorder, not otherwise specified, with depressive features and anxiety disorder, not otherwise specified. (R. at 321.) Latham reported that Blevins could understand, retain and follow simple instructions and do routine, repetitive tasks. (R. at 321.)

Latham completed a mental assessment indicating that Blevins had minimal to mild limitations in her ability to perform work-related activities. (R. at 323-25.)

Blevins was seen at Mount Rogers Community Counseling Services on two occasions in February and March 2005 for individual therapy. (R. at 340-41.) In March 2005, she reported that she was coping well. (R. at 340.) She reported being involved with her church. (R. at 340.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2006); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520 (2006). If the Commissioner finds

-11-

conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2006).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2) (West 2003 & Supp. 2006); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907

F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(d), if he sufficiently explains his rationale and if the record supports his findings.

By decision dated April 1, 2005, the ALJ denied Blevins's claim. (R. at 277-83.) The ALJ found that the medical evidence established that Blevins had severe impairments, namely fibromyalgia and chronic fatigue, but he found that Blevins did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 281.) The ALJ found that Blevins had the residual functional capacity to perform light work that did not require her stand and/or walk for longer than two hours in an eight-hour workday and that did not require the performance of more than occasional climbing, balancing, stooping, kneeling, crouching and crawling. (R. at 282.) Thus, the ALJ found that Blevins could not perform any of her past relevant work. (R. at 282.) Based on Blevins's age, education and work experience and the testimony of a vocational expert, the ALJ concluded that Blevins could perform jobs existing in significant numbers in the national economy, including those of an information clerk, an order clerk, a cashier, a ticket seller, a hand packager, a sorter, an assembler and an inspector. (R. at 282.) Therefore, the ALJ found that Blevins was not under a disability as defined in the Act, and that she was not eligible for benefits. (R. at 282-83.) *See* 20 C.F.R. § 404.1520(g) (2006).

In her brief, Blevins argues that the ALJ erred by rejecting the assessment of Warren. (Brief In Support Of Plaintiff's Motion For Summary Judgment, ("Plaintiff's Brief"), at 4-5.) Blevins also argues that the ALJ erred by finding that her subjective complaints were not credible. (Plaintiff's Brief at 5-6.)

Based on my review of the evidence, I find that the ALJ properly rejected Warren's assessment. First, it should be noted that Warren did not have a treating relationship with Blevins. Instead, Warren saw Blevins for only one consultative evaluation. (R. at 256-59.) Furthermore, while Warren diagnosed Blevins as suffering from a major depressive disorder, recurrent and severe, and a generalized anxiety disorder, it does not appear that Warren placed any restrictions on Blevins's work-related activities. (R. at 259.) The ALJ considered the objective medical evidence, Blevins's lack of medical treatment, Schacht's testimony and Latham's opinion in determining that Warren's opinion should be rejected. (R. at 280.) Specifically, in October 2001, Dr. Ornopia noted that Blevins was last seen in April 1999. (R. at 127.) In December 2001, Blevins reported that her depression was well-managed, and Dr. Grice reported the Blevins had a normal mental status. (R. at 173.) In January 2002, Blevins had no depression complaints. (R. at 169.) In May 2002, Dr. Grice noted that Blevins did not appear to be experiencing any depression over the loss of her occupation. (R. at 162.) In April 2003, Blevins denied any depression. (R. at 311.) In July and November 2003, Blevins had no depression complaints. (R. at 308-09.) In June and July 2004, Blevins had no depression complaints. (R. at 316-17.) In August 2004, Latham reported that Blevins could perform simple tasks, could understand, retain and follow simple instruction and could perform routine, repetitive tasks. (R. at 321.) In April 2003, Leizer indicated that Blevins suffered from a nonsevere

affective disorder and anxiety-related disorder. (R. at 233-47.) He indicated that Blevins had no restriction of activities of daily living, in maintaining social functioning or in maintaining concentration, persistence or pace. (R. at 243.) He also found that she had experienced no episodes of decompensation. (R. at 243.) In September 2002, Dr. Grice reported that Blevins could perform sedentary to light work that did not require her to stoop, kneel, crouch or crawl. (R. at 201.) She reported that Blevins could balance or reach for a total of 2.5 hours in an eight-hour workday. (R. at 201.) She reported that Blevins could walk, sit and stand up to 5.5 hours in an eight-hour workday. (R. at 201.) Dr. Grice reported that Blevins was disabled from performing her regular occupation because of the driving distance. (R. at 201.) She did report that Blevins was not disabled from any occupation. (R. at 201.) Furthermore, Blevins reported improvement with her depressive symptoms with medication. (R. at 126, 128-30, 132-33, 135.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Based on the above-stated reasons, I find that the ALJ did not err by rejecting Warren's opinion.

Blevins also argues that the ALJ erred by finding that her subjective complaints were not credible. (Plaintiff's Brief at 5-6.) Based on my review of the ALJ's decision, however, I find that the ALJ considered Blevins's allegations of pain in accordance with the regulations. The Fourth Circuit has adopted a two-step process for determining whether a claimant is disabled by pain. First, there must be objective medical evidence of the existence of a medical impairment which could reasonably be expected to produce the actual amount and degree of pain alleged by the claimant. *See Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Second, the intensity and persistence of the claimant's pain must be evaluated, as well as the extent to which the

-15-

pain affects the claimant's ability to work. *See Craig*, 76 F.3d at 595. Once the first step is met, the ALJ cannot dismiss the claimant's subjective complaints simply because objective evidence of the pain itself is lacking. *See Craig*, 76 F.3d at 595. This does not mean, however, that the ALJ may not use objective medical evidence in evaluating the intensity and persistence of pain. In *Craig*, the court stated:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers....

76 F.3d at 595.

I find that substantial evidence supports the ALJ's finding that Blevins's subjective complaints of disabling functional limitations were not credible. The ALJ properly considered the objective evidence of record. (R. at 280-81.) The ALJ noted that the medical evidence showed that no physician found that Blevins was in extreme physical pain or distress on clinical examination. (R. at 281.) The medical evidence also showed that Blevins had normal motor, sensory and reflex examinations and normal range of motion of all of her joints. (R. at 142, 149, 173.) Furthermore, Dr. Murphy reported that Blevins's fibromyalgia was fairly well-controlled with medication and exercise. (R. at 309.) The ALJ also considered Blevins's activities of daily living when considering her allegations of disabling pain. (R. at 281.) The record shows that Blevins walked her dog every day for 20 minutes, went to the Wellness Center, went to church and could drive for up to one hour. (R. at 88-89.) Blevins

-16-

reported exercising, including swimming and walking, and assisting her mother with errands. (R. at 88-89, 309.)  Based on this, I find that the ALJ considered Blevins's allegations of pain in accordance with the regulations. I further find that substantial evidence supports the ALJ's finding that Blevins's allegations of disabling pain were not totally credible.

### *IV. Conclusion*

For the foregoing reasons, Blevins's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted and the Commissioner's decision denying benefits will be affirmed.

I further deny Blevins's request to present oral argument based on my finding that it is not necessary in that the parties have more than adequately addressed the relevant issues in their written arguments.

An appropriate order will be entered.

DATED:     This 1st day of September 2006.

/s/  *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE